## L.J.S. *vs.* J.E.S.

Norfolk. October 2, 2012. - February 8, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Divorce and Separation,* Alimony, Child support, Amendment of judgment. *Taxation. Parent and Child,* Child support.

Discussion of I.R.C. § 71(c)(2) (2006) and regulations promulgated pursuant thereto, providing for the recharacterization of alimony payments as child support for Federal tax purposes. [347-348]

This court concluded that in the context of fashioning divorce judgments or modifications of such judgments, when the issue of tax consequences has been raised and the judge has been provided with appropriate evidence in the record, the judge should consider the tax consequences arising from a judgment. [349-353]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on December 10, 2007.

The case was heard by *Eliot K. Cohen,* J., and a motion to alter and amend judgment was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*W. Sanford Durland III* for the defendant.

*Adam S. Avratin* (*Karen J. Wayne* with him) for the plaintiff.

IRELAND, C.J. We granted the defendant husband's application for further appellate review limited to the issue whether the Probate and Family Court judge erred by not considering the husband's potential Federal tax consequences pursuant to I.R.C. § 71(c)(2) (2006) when he denied the husband's motion to alter or amend the alimony provisions of the divorce judgment. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed. *J.E.S.* v. *L.J.S.,* 79 Mass. App. Ct. 1117 (2011). Because we conclude that, if presented with evidence of potential tax consequences, a judge should consider those consequences when creating or modifying alimony

provisions in a divorce instrument, we vacate the order on the husband's motion to alter or amend the divorce judgment to the extent that the judge did not consider the uncertainty of potentially unfair tax consequences, and remand the case for further proceedings consistent with this opinion.

*Statutory scheme.* Under I.R.C. § 71(c)(2) of the Internal Revenue Code, alimony payments may be recharacterized as child support for Federal tax purposes:

> "[I]f any amount specified in the [divorce] instrument will be reduced —
>
> "(A) on the happening of a contingency specified in the instrument relating to a child (such as attaining a specified age, marrying, dying, leaving school, or a similar contingency), or
>
> "(B) at a time which can clearly be associated with a contingency of a kind specified in subparagraph (A),
>
> an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse."

Regulations promulgated pursuant to I.R.C. § 71(c)(2) state that support payments, even if otherwise determined to be alimony, will be characterized as child support (1) if they are reduced within six months before or after a child attains the age of eighteen, twenty-one, or the local age of majority; or (2) if payments are reduced twice or more within one year before or after a child reaches any age between eighteen and twenty-four. Treas. Reg. § 1.71-1T(c), Q & A (18) (1984).

In addition to the examples of child-related events constituting a specific contingency set out in the statute, the regulations offer examples of contingencies, such as a child attaining a specified income level or gaining employment. Treas. Reg. § 1.71-1T(c), Q & A (17) (1984). The regulations also state that "a contingency relates to a child of the payor if it depends on any event relating to that child, regardless of whether such event is certain or likely to occur." *Id.*

Tax consequences arise under these provisions because a

payor may deduct alimony, but not child support.[1] I.R.C. § 71(c)(2).

*Facts and procedure.* The husband and the wife sought a divorce on the ground of irretrievable breakdown of marriage in 2007. The judge issued a judgment of divorce nisi on November 17, 2009. The relevant sections of the divorce judgment, as stated in the judgment and a corrected order of clarification, are the following.

The husband will pay $1,000 each week as child support and $1,325 each week as alimony. The wife will occupy the home, and pay the mortgage on it, as well as certain related expenses, "until the youngest child of the parents graduates from High School, anticipated to be in June 2013. At such time the parties shall place the marital home . . . on the market for sale." After the house is sold, the husband's alimony obligation will be reduced to $500 each week and will continue until the death of either party or until the remarriage of the wife.

Based on the language of I.R.C. § 71(c)(2), the husband moved to alter or amend the divorce judgment on November 24, 2009, requesting, among other things, that the judgment reflect that a future reduction in alimony would not depend on a child-related event. He requested that the wife continue to have the use and occupancy of the marital house until August 1, 2013, rather than "until the youngest child of the parents graduates from High School, anticipated to be June 2013." He also proposed May 1, 2013, as the date the house be put up for sale with the provision that no sale should take place before August 1, 2013. Additionally, he proposed that alimony be reduced to $500 each week as of September 1, 2013, after the house was on the market for sale for four months. With these alterations to the judgment, the husband asserted that he would avoid the pos-

---

[1]Alimony payments are intended for the support of a spouse and are deductible from the payor's taxable income. I.R.C. §§ 71(b)(1), 215 (2006). Child support payments are fixed by the divorce instrument as payable for the support of the children of the payor spouse and are not deductible from the payor's income. I.R.C. § 71(c)(1). However, "[i]t is well settled that the [Tax Court's] determination of whether payments are in the nature of support or part of a property settlement does not turn on the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement." *Beard* v. *Commissioner of Internal Revenue*, 77 T.C. 1275, 1283-1284 (1981).

sibility of having to pay taxes on the alimony as if it were child support under I.R.C. § 71(c)(2). At the hearing on the motion, the judge addressed the alimony provisions in the divorce judgment. He stated that the provisions concerning alimony were based on the ability of the husband, the "major income producer," to pay, and the need of the wife. He also stated that the wife's financial needs will change after the house is sold at some uncertain future date, and that he intentionally did not include a date for reduction of alimony because "we don't know when the marital house is going to be sold."

The judge stated that he wanted to be "fair and equitable" and ordered the house to be put on the market, with "something trigger[ing] it off." He acknowledged that the house might not sell immediately, explaining that he "anticipated there will be equity in the home when it's up for sale, and this will be some of the equity that [the wife] will then have to work with, which triggers off to a great degree why alimony is then reduced." He further stated his intent to reduce alimony after the sale of the marital home: "So that it's the graduation from high school and then it's the sale of the house, and it's left in that particular fashion for that purpose."

Regarding the issue of alimony and tax consequences, the judge told the parties that I.R.C. § 71(c)(2) did not apply: "[Y]ou talk about the Internal Revenue Code and the interpretation of the Internal Revenue Code, and I don't necessarily interpret it that way. I think it's factually driven." The judge also explained his considerations of the tax consequences of alimony, stating, "[T]hat's why the alimony is higher, giving [the husband] the tax advantage now . . . so that's geared intentionally in that fashion."

The judge issued an order on the motion to alter and amend the judgment of divorce on December 4, 2009, which did not include the husband's proposals concerning reduction in alimony. The husband appealed. The Appeals Court concluded that I.R.C. § 71(c)(2) does not apply to this alimony provision and affirmed the judgment.

*Discussion.* A judge has broad discretion in creating an equitable division of the parties' marital property. *Kittredge* v. *Kittredge*, 441 Mass. 28, 43-44 (2004). Alimony may be granted to

either spouse based on a weighing of all relevant circumstances. *Schuler* v. *Schuler*, 382 Mass. 366, 370 (1981). We rarely disturb a judge's conclusions where they are based on consideration of the factors listed in G. L. c. 208, § 34. *Kittredge* v. *Kittredge, supra* at 43-45 (judge's determination affirmed where findings demonstrated consideration of all required factors, and conclusions flowed rationally from findings and rulings). See *Bianco* v. *Bianco*, 371 Mass. 420, 423 (1976) (in case of first impression, we interpreted G. L. c. 208, § 34, to define scope of judge's discretion).

The wife asserts that the judge's ruling was proper because it reflected the husband's ability to pay and her need for support. See *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 624 (1986). She does not directly address I.R.C. § 71(c)(2), but instead argues that the judge considered the factors listed in G. L. c. 208, § 34, and properly assigned alimony obligations.[2] Because the reduction in alimony will occur only after the sale of the marital home, she argues, the change in alimony reflects "a reduction in her expenses rather than the child graduating [from] high school."

The husband bases his argument on the premise that a judge must consider tax consequences when adjudicating divorce judgments. We agree that, in the context of fashioning divorce judgments or modifications of such judgments, where the issue of tax consequences has been raised and the judge has been provided with "appropriate evidence in the record," *Wolfe* v. *Wolfe*, 21 Mass. App. Ct. 254, 258 n.7 (1985), the judge should consider the tax consequences arising from a judgment.[3] See *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 866 (1989). In some

[2]General Laws c. 208, § 34, states, in pertinent part, that when determining alimony or assignment of estate, the judge shall consider the following factors: "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, . . . the amount and duration of alimony, [and] the present and future needs of the dependent children of the marriage." The judge "may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." *Id.*

[3]We have previously discussed tax consequences in divorce or separation

circumstances, tax consequence issues may be raised during trial; in others, the issues may be more appropriately raised in a postjudgment motion to amend the judgment under Mass. R. Dom. Rel. P. 59 (e), or for relief under Mass. R. Dom. Rel. P. 60 (b). See *Fechtor* v. *Fechtor, supra* at 867 & n.7 ("When tax consequences seem likely to present significant problems, the judge can perhaps deal with them by issuing a tentative order submitted to counsel in advance of judgment for criticism and suggestions"). Here, the husband filed a postjudgment motion specifically requesting that the judge consider the potential adverse tax consequences of the alimony and support order, providing citations to the tax code and other relevant authorities.

As the Appeals Court stated in *Wolfe* v. *Wolfe, supra,* "the importance of consideration of the tax consequences of divorce and of the division of property and payments incident thereto" has long been recognized by our appellate courts. The Massachusetts Child Support Guidelines (effective Jan. 1, 2009) (2009 guidelines) similarly recognize the importance of taking tax consequences into account when devising support orders. For example, the 2009 guidelines provide that the "guidelines do not preclude the Court from deciding that any order be designated in whole or in part as alimony without it being deemed a deviation provided the tax consequences are considered in determining the order and the after-tax support received by the recipient. It is the responsibility of the parties to present the tax consequences of proposed orders to the Court." 2009 guidelines, II.A. See *Rice* v. *Rice,* 372 Mass. 398, 402 n.4 (1977); *Fechtor* v. *Fechtor, supra* at 866.

Our conclusion that a judge should consider the tax consequences of a judgment when creating or modifying divorce instruments comports with the statutory mandate to consider the

agreements where judges are valuing assets or obligations. See, e.g., *Adams* v. *Adams,* 459 Mass. 361, 389 (2011) (valuation of partnership); *Bernier* v. *Bernier,* 449 Mass. 774, 781-790 (2007) (tax affecting valuations of C corporations and S corporations); *Kittredge* v. *Kittredge,* 441 Mass. 28, 31 (2004) (valuations of business entities); *Silverman* v. *Spiro,* 438 Mass. 725, 731 (2003) (liquidation of retirement assets); *Williams* v. *Massa,* 431 Mass. 619, 629-630 (2000) (valuation of real estate interests); *deCastro* v. *deCastro,* 415 Mass. 787, 796 n.8 (1993) (transfer of stock); *Abrams* v. *Burg,* 367 Mass. 617, 622 (1975) (payments not intended to be taxable to payee).

parties' income and liabilities. General Laws c. 208, § 34, mandates that when determining the amount of alimony to be paid, a judge must consider the income and liabilities of each party, and G. L. c. 208, § 53 (*b*), which limits alimony to the recipient's need or to thirty to thirty-five per cent of the difference between the parties' gross incomes at the time of the judgment, states that gross income shall be defined as set forth in the child support guidelines: "gross income from whatever source regardless of whether that income is recognized by the Internal Revenue Code or reported to the Internal Revenue Service or state Department of Revenue or other taxing authority." 2009 guidelines, I.A. Our conclusion should not be taken to mean the judge must minimize tax consequences as a result of those considerations. The judge has "considerable discretion" to make those determinations. *Pierce* v. *Pierce*, 455 Mass. 286, 293 (2009).

The judgment in this case delineated a two-step process in the reduction of alimony: that the husband's reduction of alimony be reduced on the sale of the marital home; and that the marital home be put on the market for sale when the youngest child graduates from high school. The husband argues that the divorce judgment was written such that the reduction in alimony payments to the wife, which are excludable from his taxable income, will be construed under I.R.C. § 71(c)(2) as nondeductible child support because the marital home will be put up for sale on a date based on a contingency of his child. The statute applies, he claims, because the payment of alimony is reduced on the "happening" of a contingency related to a child, or at a time that can clearly be associated with such a contingency.[4]

However, it is uncertain whether the Internal Revenue Service or the United States Tax Court would determine from this judgment that alimony payments should be recharacterized as child support payments pursuant to I.R.C. § 71(c)(2). No party has cited, and we have not found, any case from the Tax Court that

---

[4]The husband also argues that the child may be considered emancipated, pursuant to the language of G. L. c. 208, § 28, at the time of the sale of the home, and that emancipation is a child-related contingency. Given our conclusion, we decline to decide whether the youngest child of the husband and wife would be emancipated within the context of the divorce judgment and I.R.C. § 71(c)(2).

addresses the specific facts presented in this case, and those cases that have addressed comparable circumstances leave us uncertain whether the Tax Court would conclude that these circumstances would cause such a recharacterization.[5] Where, as here, the tax consequences are uncertain, the judge must take that uncertainty into account and consider whether there are alternatives that will accomplish the judge's purposes but avoid the potential that his decision will trigger adverse and unwanted tax consequences.

Here, the judge made findings that supported his reasons for alimony payments based on his consideration of the relevant factors of G. L. c. 208, § 34, including the husband's ability to pay alimony and the wife's capacity to pay the mortgage and related expenses. It appears from the record that the judge intended that alimony be paid to the wife in accordance with her needs, which will change after the sale of the marital home, and that, once the marital home is sold, the wife will no longer need the same amount of alimony. Given our conclusion, a judge, in his or her discretion, should consider the possible application of I.R.C. § 71(c)(2), and explore whether the objectives of the judgment can be met in a manner that does not create an uncertainty of potentially unfair tax consequences.

*Conclusion.* The order on the husband's motion to alter or amend the divorce judgment is vacated to the extent that the judge did not consider the uncertainty of potentially unfair tax

---

[5]Some cases from the United States Tax Court demonstrate that, if a reduction or elimination of alimony occurs "due to the happening of a contingency relating to a child," such as a child reaching a certain age, that "happening" will trigger a recharacterization of support payments from alimony to child support. See, e.g., *Hammond* v. *Commissioner of Internal Revenue*, 75 T.C.M. (CCH) 1745, 1747 (1998) (reduction of alimony tied to child's eighteenth birthday); *Fosberg* v. *Commissioner of Internal Revenue*, 64 T.C.M. (CCH) 1527, 1529 (1992). Other cases, however, hold that, unless the child-related contingency is clearly associated with the reduction in alimony, there will be no recharacterization. See, e.g., *Schilling* v. *Commissioner of Internal Revenue*, 104 T.C.M. (CCH) 272 (2012) (cessation of payments after six years did not qualify as contingency relating to child); *Shepherd* v. *Commissioner of Internal Revenue*, 79 T.C.M. (CCH) 2078, 2080-2081 (2000) (coincidence that alimony ceased within six months of child's eighteenth birthday). See also *Lawton* v. *Commissioner of Internal Revenue*, 78 T.C.M. (CCH) 153, 156 (1992) (where no child-related contingency exists in support orders, support payments are characterized as alimony).

consequences. An order is to enter remanding the case to the Probate and Family Court for further proceedings consistent with this opinion.

*So ordered.*