MOORE, Judge,
concurring in part and dissenting in part.
I concur that the judgment of the Madison Circuit Court (“the trial court”) is due to be affirmed in all respects except as to the award of periodic alimony, which, in my opinion, should be reversed.
In her testimony, Mary Jean Knight (“the wife”) requested $3,000 per month in alimony. The following colloquy then occurred:
“[Wife’s counsel]: And tell the Court, please, ma’am, how did you come up with that figure? Why did you come up with $3,000?
“[Wife]: Well, the way I did it was—I thought about his job, the money that he makes—his civilian job and also his retirement—and. I added the two together, and I divided it by three, and it came up to $3,000.
“[Wife’s counsel]: You said, ‘his retirement.’ Are you talking about disability?
“[Wife]: His disability.
“[Wife’s counsel]: Because retirement— you are already asking for it to be divided?
“[Wife]: Right. It’s a given. I’m entitled to that.
“[Wife’s counsel]: So you added those together, and then you—tell the Court again, what did you do?
“[Wife]: I divided it by three, and that’s how I came up with the $3,000.
“[Wife’s counsel]: And do you believe that is a fair figure for you to be awarded as alimony on a monthly basis?
“[Wife]: Yes. I feel that that would be a good figure, because that way I can still live the way I lived when he was with me.”
However, in Alabama, periodic alimony is not based on any mathematical formula like the one the wife used.[3] Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004).
Alimony is purely statutory. Ivey v. Ivey, 378 So.2d 1151 (Ala.Civ.App.1979). Section 30-2-51(a), Ala.Code 1975, provides for “maintenance of a spouse,” which this court has construed to include periodic alimony, monetary installments payable to a dependent spouse to enable that spouse not only to live independently, but also to sustain, to the extent possible, the marital standard of living, O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996), he., “the economic status quo,” Orr v. Orr., 374 So.2d 895, 897 (Ala.Civ.App.1979). The *703 legislature intended that periodic alimony would be payable when “the petitioning spouse has demonstrated a need for continuing monetary support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet.” Shewbart v. Shewbart, 64 So.3d 1080, 1087 (Ala.Civ.App.2010).
In order to prove a need for alimony, a spouse cannot simply divide the income of the other spouse or multiply the income by some arbitrarily determined fractional figure.
“As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life. See, e.g., Miller v. Miller, 695 So.2d 1192, 1194 (Ala.Civ.App.1997); and Austin v. Austin, 678 So.2d 1129, 1131 (Ala.Civ.App.1996).”
Shewbart, 64 So.3d at 1088. The law does not require a spouse seeking alimony to establish the marital standard of living by presenting a budget showing each individual cost, McCarron v. McCarron, 168 So.3d 68, 76 (Ala.Civ.App.2014), but a spouse may choose to present a budget to convince the trial court of his or her needs.
In this case, in an effort to prove her need for alimony, the wife presented to the trial court a budget, outlining the living expenses she anticipated having in Law-renceville, Georgia, which is located just northeast of Atlanta. .Ordinarily, that budget would not be considered relevant because “the starting point in calculating periodic alimony is the financial costs of maintaining the marital standard of living, not the actual cost of the postmarital standard of living.” Kean v. Kean, 189 So.3d 61, 66 (Ala.Civ.App.2015). However, in that budget, the wife included costs only for the same or similar items and services the parties testified that' they had paid for during the marriage.[4] Gregory Lovett Knight (“the husband”) testified at length about the costs associated with the marital standard of living and does not dispute most of the costs itemized by the wife in her budget. The husband complains that the wife did not prove that, in order to maintain the marital standard of living, she needed to be able to pay for the following items each month:
“$120 for haircuts, $75 for nails, $160 for entertainment, $28 for dry cleaning, $85 for miscellaneous, $180 for clothes, $75 for gifts, $175 for church/contributions, and $250 for their son’s college expenses’.” [5] ’
However, the trial court received evidence indicating that the wife enjoyed those “luxuries,” as the husband described them, during the marriage. The trial court could have inferred from the evidence as to the parties’. resources that the amounts claimed would be in> line with the reason *704 able costs of maintaining the marital standard of living.[6] In total, the wife presented a budget indicating that she needed monthly income of $4,070.12 in order to sustain her marital lifestyle.[7]'
Assuiiiing that the wife proved to the satisfaction of the trial court that she needed $4,070.12 each month to live as She had during the marriage, in order to obtain periodic alimony the wife additionally had to prove
“her inability to achieve that' same standard of living through the use of ... her own individual assets, including ... her own separate estate, the marital property received as part of any settlement or property division, and ... her own wage-earning capacity,...”
Shewbart, 64 So.3d at 1088. The evidence in the record contradicts the trial court’s implicit determination that the wife needs periodic alimony to maintain the marital standard of living.
Issues of alimony and property division must be considered together. Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App.1996). In its judgment, the trial court awarded the wife $2,653.60 per month as her portion of the husband’s military-retirement benefits.[8] The wife testified that she works as a manager at a Wal-Mart store, earning a biweekly net income of $776.96, or $1,683,39 monthly. See Rieger v. Rieger, 147 So.3d 421, 431 (Ala.Civ.App.2013) (holding that net income should be used in assessing periodic -alimony). The wife testified that, because of joint problems, she planned to quit working as a manager ahd that she would become an associate for less pay. However, the trial court could not have considered the predicted reduction in earnings when determining the wife’s financial needs. See DeShazo v. DeShazo, 582 So.2d 564 (Ala.Civ.App.1991) (trial court cannot consider impact of expected retirement when calculating periodic alimony, but must defer consideration of that issue to a subsequent modification action after retirement occurs). The combination of the wife’s net wages and her share of the husband’s military-retirement benefits, alone, which total $4,236.89, exceed her admitted financial need of $4,070.12, without considering the other substantial property awarded to the wife in the judgment. The wife did not prove she needed any periodic alimony in order to meet her claimed financial needs.[9]
“[T]he award and [the] amount of periodic alimony are matters that lie within the discretion of the trial court and may be reversed upon an appeal only for, a clear *705 abuse of the trial court’s judicial discretion.” Scott v. Scott, 460 So.2d 1331, 1332 (Ala.Civ.App.1984). An award of periodic alimony to a spouse who has not demonstrated a need for that award in order to sustain the marital standard of living amounts to an abuse of discretion. Long v. Long, 109 So.3d 633, 652 (Ala.Civ.App.2012), overruled on other grounds, Marshall v. Marshall, 168 So.3d 52 (Ala.Civ.App.2014). That is so regardless of the fact that the parties were married for 40 years or more and regardless of the disparity in the postmarital income of the parties. A trial court has no discretion to use alimony as a marriage-longevity reward or as a means to equalize the post-marital income of the parties. In deciding otherwise, the main opinion seriously misconstrues alimony law and now establishes a dangerous precedent granting trial courts extraordinary and unwarranted discretion when awarding alimony well beyond that intended by the legislature when it enacted § 30-2-51(a).
The main opinion admits that “[t]he evidence suggests that the wife will be able to meet her postdivorce monthly expenses with her income and her share of the husband’s military-retirement account.” 226 So.3d at 697. Nevertheless, the main opinion maintains that “being able to meet one’s monthly expenses does not equate to being able to engage in the lifestyle—to the extent possible—that one had while married.” 226 So.3d at 697. I do not even follow the logic of that last sentence. The vast majority of married couples living in this state maintain their standard of living through regular monthly payments for housing, food, clothing, utilities, credit cards, and the like. Thus, in most cases, “being able to meet one’s monthly expenses” does indeed “equate to being able to engage” in the marital lifestyle. That is especially true when a petitioning spouse includes in his or her monthly budget an estimate of the costs of nonrecurring, irregular, or extraordinary expenditures, as the wife did in this case. Her budget, her sole piece of evidence to establish the financial costs of the marital standard of living, itemizes each and every dollar she needs in order to live as she did during the marriage, whether characterized as a regular monthly bill or otherwise. The record contains no evidence of any further economic need that could possibly justify an award of $2,000 per month in periodic alimony. Because she can pay the costs to maintain the marital standard of living with her own wages and the liquid assets from the property division, the wife did not prove a present need for periodic alimony.
In seeking a reversal of the periodic-alimony award, the husband does not, as the main opinion states, ask this court to “disregard the many factors this court has historically considered in reviewing whether a trial court abused its discretion in awarding periodic alimony and in determining the amount of such an award.” 226 So.3d at 695. As Shewbart clarifies, before a trial court can even consider the equities of a periodic-alimony award, the petitioning spouse must establish a need for the money. If the petitioning spouse does not prove a need for alimony, a trial court cannot award alimony based on some sense of abstract fairness. In this case, the record shows that the wife can live as she did during the marriage based on her own income and the income from the husband’s military retirement. Thus, regarding the matter of alimony, it is immaterial that the parties had been married 40 years or that the husband earns vastly more than the wife. This court cannot affirm the alimony award based on those factors because they do not in either case establish the wife’s need for alimony.
At best, the wife proved that, due to her age and physical infirmities, she may ac *706 cept a demotion or retire in the near future, in which case she would need alimony to supplement the retirement benefits so she could meet her economic needs. The trial court should not have awarded her periodic alimony based on that future need, however. Instead, “[t]he trial court should reserve jurisdiction over the issue of alimony if the facts indicate that future circumstances may entitle either party to a later award of alimony.” Williams v. Williams, 905 So.2d 820, 828 (Ala.Civ.App.2004). Therefore, I believe that the judgment, insofar as it awards alimony, should be reversed and that the trial court should be instructed to reserve jurisdiction to award periodic alimony in the future. Because the main opinion concludes otherwise, I respectfully dissent as to this issue.
On Application for Rehearing
THOMPSON, Presiding Judge.
APPLICATION OVERRULED. NO OPINION.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., dissents, with writing.

. I further note that military-disability-retirement benefits cannot be used for paying alimony. Ex parte Billeck, 777 So.2d 105, 109 (Ala.2000) (holding that federal law precludes courts from considering veteran’s disability payments in awarding alimony).

. The wife listed rent, instead of a mortgage, and rental insurance, rather than homeowners’ insurance, but the remainder of the list corresponded to the same types of expenses the parties had incurred to maintain their station during the marriage, including such non-necessities as cable-television expenses, Internet-service expenses, cellular-telephone expenses, entertainment expenses, out-of-home dining expenses, beauty-treatment costs, pet costs, gifts, and charity donations.

. The wife listed $250 per month to assist the parties’ youngest child.. I presume that the trial court did not consider those expenses in awarding periodic alimony. See Sosebee v. Sosebee, 896 So.2d 557, 562 (Ala.Civ.App.2004) ("The wife’s expenditures for the [child] are gratuitous undertakings of the wife that the husband may not be held responsible for through the payment of alimony to offset those expenditures,”).

. The wife' included an amount of $85 for "miscellaneous,” which she described as unexpected costs, such as "if the vacuum goes out, or anything like that.”

. The wife submitted a budget of $4,343.28, but, after deducting $250’ for the youngest child’s support, which cannot be considered for alimony purposes, and $23.16 for health-insurance costs, which the husband was ordered to cover separately, the amount totals $4,070.12.

. The record contains no evidence as to the effect taxation will have on the awards, so I do not consider whether the wife cannot depend on the gross amount of military-retirement benefits. See L.J.S. v. J.E.S., 464 Mass. 346; 350, 982 N.E.2d 1160, 1163 (2013) ("[I]n the context of fashioning divorce judgments or modifications of such judgments, where the issue of tax consequences has been raised and the judge has been provided with ‘appropriate evidence in the record,’ ... the judge should consider the tax consequences arising from a-judgment”) (quoting Wolfe v. Wolfe, 21 Mass.App.Ct. 254, 258 n. 7, 486 N.E.2d 747, 749 n. 7 (1985)).

.Because the wife did not prove a financial 9 cial need for periodic alimony, there is no need to consider whether the husband had the ability to pay, so I do not discuss whether the husband would be financially crippled by the award.